UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PAMELA J. MCKINNEY,                                Case No.

       Plaintiff,

  v.

ASSET ACCEPTANCE LLC,
and
GORDON & WEINBERG, P.C.

       Defendants.

## COMPLAINT

### INTRODUCTION

1. This is an action for actual, statutory, punitive damages, costs, and attorneys' fees brought pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") and the Pennsylvania Dragonetti Act, 42 Pa.C.S.A. §§ 8351-8355.

2. Defendants attach as an exhibit to their debt collection lawsuits false, misleading and deceptive affidavits.

3. In nearly all of these lawsuits, Defendants do not possess and cannot obtain proof that the consumers they sue owe the debts in the amount alleged.

4. The debt collection lawsuits and affidavits misrepresent the character, amount, or legal status of the alleged debt.

5. Defendants aver in their debt collection lawsuits and affidavits an amount owed by the consumer that isn't authorized by the agreement creating the debt or permitted by law.

6. The primary characters in this fraudulent scheme are (1) a law firm, Gordon & Weinberg, P.C. ("GW"); and (2) a debt collector, Asset Acceptance, LLC ("Asset").

7. Plaintiff Pamela J. McKinney ("McKinney") seeks to end this abhorrent practice.

## JURISDICTION/VENUE

8. This Court has jurisdiction pursuant to 15 U.S.C. § 1692k and 28 U.S.C. § 1331 and § 1367. Plaintiff lives in this District, the facts as to Plaintiff's claim occurred in this District and Defendants transact business in this District.

## PARTIES

9. Plaintiff McKinney is a resident and citizen of Allegheny County, Pennsylvania

10. Defendant Asset is a foreign limited liability company existing pursuant to the laws of the State of Delaware. Asset is engaged in the business of debt collection. Asset is a "debt collector" as defined by the FDCPA, and conducts business at 28405 Van Dyke Avenue, Warren, MI 48093. Asset's registered agent is listed as Corporation Trust Company, The Corporation Trust Center, 1209 Orange Street, Wilmington Delaware 19801.

11. Defendant Gordon & Weinberg, PC ("G&W") is a Pennsylvania Professional Corporation engaged in the business of debt collection as well as the practice of law in the Commonwealth of Pennsylvania. G&W's principal place of business is 1001 E. Hector Street, Suite 220, Conshohocken, Pennsylvania. G&W regularly files lawsuits against Pennsylvania residents in Pennsylvania courts as part of its debt collection activities and is a "debt collector" as defined by 15 U.S.C. § 1692a

# FACTS

## A. Background Facts

### 1. Debt Buyers

12. "Debt buyers" are companies, like Asset, that buy defaulted, charged-off debts for pennies on the dollar and then seek to collect the full face value of the debts for themselves. Many debt buyers also resell debts to other debt buyers. It is not uncommon for debts to be bought and sold numerous times over.

13. Debts are priced on a sliding scale, with freshly charged-off debts commanding a higher price than older debts that other debt buyers and collection agencies have previously tried and failed to collect. There is even an active market for debts that are past the statute of limitations and for debts that have previously been discharged in bankruptcy.

14. When debt buyers purchase portfolios they do not actually purchase anything other than the theoretical claim of ownership. There are no records assigned and no contracts transferred. The debt buyers typically do not purchase or obtain documents showing indebtedness between the original creditor and debtor, such as a contract, account statements, customer service records, or customer dispute records. All that debt buyers actually purchase is an electronic list of consumers and their last known addresses with an amount the creditor claims to have been owed. This information is transmitted to the debt buyer electronically in the form of a spreadsheet and is often referred to as "media." Often the interest rates, dates of birth or social security numbers are not included, and addresses have not been updated.

15. Some debt purchase and sale agreements provide the debt buyer may go back to the original creditor and obtain account documentation for only a limited period

of time and in only a limited number of accounts, such as 2% of the accounts. Other purchase and sale agreements provide that the debt buyer may never obtain any documentation for any debts in the portfolio. In addition, each time a debt is resold, it becomes less likely that the purchaser will be able to obtain documentation of the debt.

16.     Often times the purchase and sale agreements state that the creditor does not warrant the accuracy of the information provided.

17.     As a result, most debt buyers have significant difficulty substantiating their claims, which has been widely recognized as a problem for the industry and consumers. *See e.g.*, Federal Trade Commission, *Collecting Consumer Debts: The Challenges of Change* (2009) (discussing problem and proposing solutions).

18.     In fact, though debt buyers will often produce what is claimed to be an original card member agreement, a document containing terms and conditions of a credit card account, these documents are false. Creditors who do transfer and make available later the "terms and conditions" do not provide debt buyers with the actual agreement or documents for that specific account. Instead, the creditors provide, and the debt buyers retain, only a generic sample contract, which they later represent to consumers and the courts as a genuine contract for that specific account.

19.     Debt buyers use multiple tools to collect consumer debts, including contacting consumers directly by mail, telephone, text message and email, reporting the debt to credit reporting agencies, and hiring other debt collectors to collect the debt for them. Increasingly, however, debt buyers have turned to the courts to collect consumer debts.

20.     To aid in litigation against consumers, debt buyers have established relationships with debt collection law firms throughout the country who serve less in the

capacity as traditional legal counsel, and more as an outsource vendor. The law firms are paid a contingency percentage of recovery.

21.     Debt buyers use these third party law firms and the courts in the Commonwealth of Pennsylvania, as well as courts across the country, as a means to collect from consumers in a manner that does not comply with Pennsylvania law.

22.     As an example of one such violation, debt buyers submit affidavits with the lawsuits they file in the Courts that contain numerous material falsehoods. These affidavits misrepresent that the affiant can testify as to the allegations set forth in the complaint.

23.     The benefit to debt buyers of insuring that an affidavit is true and accurate is outweighed by the cost of the staff and attorney time inherent in doing so.

24.     Furthermore, upon information and belief, the claimed affiant is at times not the actual individual who signs the affidavit. Instead, other individuals sign the sworn affidavit, claiming to be the affiant whose name appears on the affidavit.

25.     Debt buyers, like other plaintiffs in civil lawsuits, bear the burden of proof in legal actions. In order to prevail, the debt buyer must submit admissible evidence demonstrating that it is the rightful owner of the account and that the defendant actually owes the debt in the precise amount claimed.

26.     Debt buyers generally do not obtain additional account documentation prior to bringing a lawsuit against a consumer. Instead, debt buyers generally bring lawsuits bases solely upon the skeletal "media" obtained upon purchase of the account portfolio. This "media" is not sufficient to meet the debt buyer's burden of proof as the plaintiff in a lawsuit.

27.     Furthermore, because purchase and sale agreements severely limit or wholly eliminate debt buyers' ability to obtain documentation of the debts from the original creditor, debt buyers are actually unable to obtain admissible evidence of the debt in the vast majority of cases that they file.

28.     Because of the high rate of defaults by Defendants in debt collection lawsuits, however, debt buyers are rarely put to their proof.

29.     Consumers appear to defend themselves in a small number of cases, and debt buyers obtain default judgments in the vast majority of lawsuits that they bring.

30.     Consumers are substantially harmed when Defendants use the default judgments to freeze bank accounts, garnish their wages, and pressure them into making settlement agreements on debts of dubious merit for which little or no documentation is available.  They are also harmed when these judgments appear on their credit reports, preventing them from obtaining housing, employment, or affordable credit.

31.     The high rate of default judgments entered in such collection actions creates a disincentive for the debt buyers and their law firms to check the truth and accuracy of their pleadings or affidavits.

32.     In the event a consumer contests a debt buyer's collection action, the debt buyer in substantially all of these cases will dismiss the suit on a cost-benefit calculation, which weighs the cost of obtaining proof of their claim against the expected judgment.

**B.     Defendant's Facts**

33.     Defendants are sophisticated litigants who specialize in debt collection.

34.     Defendant Asset accomplishes its debt buying operation by purchasing multiple multi-million dollar portfolios of distressed and charged off debt from original creditors.  Many of these debts are credit card accounts.

35. Defendant Asset routinely uses the Civil Courts to collect debts from consumers.

36. Defendant Asset, through the Defendant GW law firm, file hundreds if not thousands of collection lawsuits every year alleging that consumers owe precise dollar amounts and attach affidavits swearing to the courts and to the consumers that these precise amounts are true and correct.

37. Defendants pattern and practice is to attempt to collect debts by attaching false affidavits to debt collection complaints.

38. Defendants' intentionally use virtually identical form affidavits in the lawsuits they file, alleging facts that are not in possession of Defendants to which Defendants' officers, employees and/or agents are not qualified to sign under oath due to their lack of proper information.

39. Defendants' affidavits are purposely drafted in such a manner as to suggest that Defendants can produce a witness and have obtained or could obtain documentation of the debt from the original creditor, including evidence of an indebtedness between the original creditor and debtor, such as a contract and any subsequent amendments to the contract, account statements, customer service records, or customer disputes.  On information and belief, however, the Defendants have not obtained documentation from the original creditor, nor are they able or intending to obtain such documentation in the vast majority, if not all, cases.

40. Upon information and belief, Defendant Asset worked with Defendant GW to help create the false affidavits, drafting language that the Defendants knew would be interpreted incorrectly by consumers and courts across the country. Defendants designed the affidavits to be misinterpreted.

41.     Defendants authorize and/or have knowledge of the deceptive and misleading nature of the affidavits.

**C.      Plaintiff's Facts**

42.     On October 5, 2011, Asset through the G&W law firm sued McKinney on an alleged credit card debt. (Asset Acceptance, LLC vs. Pamela J. McKinney, AR-11-007038, Court of Common Pleas of Allegheny County) ("McKinney underlying case"). A true and correct copy of the complaint is attached as Exhibit "A".

43.     Frederic I. Weinberg, Esquire ("Weinberg") allegedly signed the complaint.

44.     Weinberg is a founding member and partner of Gordon & Weinberg, P.C.

45.     The complaint included, and relied upon, a notarized affidavit allegedly signed by Pamela McCullough ("McCullough Affidavit"). According to the affidavit, McCullough is purporting herself to be an "agent" for Asset.

46.     McCullough avers in the notarized affidavit that she can testify at trial as to the facts alleged in the complaint.

47.     This statement is false, deceptive and misleading.

48.     Upon information and belief, the original creditor provided Asset with a computer data file in the form of an electronic spreadsheet known in the industry as "media."

49.     Computerized files of an original creditor as the business records of a successor debt buyer are not admissible. *Commonwealth Financial Systems, Inc. v. Smith*, 15 A.3d 492 (Pa. Super. 2011).

50. Upon information and belief, the affiant is not familiar with how the original creditor created or maintained its business records, employed or protected its computers, and electronically transmitted spreadsheets.

51. Upon information and belief, the affiant does not have personal knowledge that the entries on the spreadsheets were made at or near the time of the events or that someone with knowledge transmitted the data.

52. The affiant is not competent to testify to the matters contained in the affidavit or complaint since the affiant is relying on the computerized files of the original creditor.

53. Upon information and belief, Defendants knew or had good reason to know that the affiant was not competent to testify.

54. McCullough avers in the affidavit that as of March 28, 2011, McKinney owed $1,962.21 plus interest of $908.64 at the rate of 18%.  This statement is false, misleading and deceptive.

55. Upon information and belief, at the time the complaint was filed, Defendants were not in possession of (1) account statements starting with a zero balance up through the date of the alleged default, (2) terms and conditions for the subject account; (3) account statements reflecting McKinney owed $1,962.21 as of March 28, 2011; (4) proof that McKinney' account was assigned from the original creditor and (5) documentation reflecting the rate of interest was 18%.

56. Defendants knowingly filed the action without proof of an agreement, assignment, or monthly billing statements as required by the Pennsylvania Rules of Civil Procedure.

57. The defendants brought the suit knowing full well that they had no chance of success on the merits.

58. The only possible intention of the Defendants for bringing the suit was to obtain a default judgment against McKinney or force a settlement.

59. Upon information and belief, at the time the complaint was filed the affiant and Weinberg did not review documents evidencing acquisition of McKinney's account.

60. Upon information and belief, Defendants did not have personal knowledge of the accuracy of the information provided by the original creditor.

61. The complaint and affidavit falsely represent Asset's legal standing to collect the debt.

62. The complaint alleges McKinney owed $2,921.16 as of May 19, 2011. This statement is false, deceptive and misleading.

63. On October 28, 2011, McKinney filed preliminary objections to the complaint.

64. By Order of Court dated November 10, 2011 the objections were granted.

65. Pursuant to the Court's Order, on March 13, 2012, the complaint was dismissed with prejudice.

66. McKinney incurred attorney fees in defending against the complaint.

67. As a direct and proximate result of Defendants' conduct, McKinney suffered harm to her reputation, emotional distress, mental anguish and humiliation.

68. Upon information and belief, Defendants initiated the complaint knowing that they would not be able to obtain sufficient proof to prevail and after having failed to conduct an adequate investigation.

69. Upon information and belief, Defendants knew documentary evidence to prevail in the lawsuit was not available.

70. Upon information and belief, Defendants filed the complaint in the hopes of obtaining a default judgment.

71. Upon information and belief, it is Defendants pattern and practice to file complaints without possessing admissible evidence supporting the allegations.

72. Defendants abused the judicial process by allowing McKinney to incur needless legal fees.

73. Defendants stubbornly pursue baseless litigation for an improper purpose. They rely on default judgments or settlements with pro-se consumers. When confronted with preliminary objections, the Defendants lose.

74. Defendants' conduct is malicious, willful, or oppressive, or shows a reckless indifference to the interests of others and warrants punitive damages.

## COUNT I

## VIOLATION OF THE FDCPA

75. Plaintiff repeats and re-alleges all the paragraphs above as if they were restated herein verbatim.

76. Defendants violated 15 U.S.C. §§1692e, 1692e(2)(A), 1692e(10), 1692f, and 1692f(1) by filing complaints and affidavits containing false, misleading and/or fraudulent representations in an attempt to collect an alleged debt and the attempted collection of an amount that is not permitted by law or authorized by the agreement creating the alleged debt.

77. McKinney suffered emotional distress, as a result of Defendants' violations of the FDCPA.

78. McKinney is entitled to recover actual damages, as well as statutory damages, costs and attorneys' fees as provided by the FDCPA.

## COUNT II
## VIOLATION OF THE DRAGONETTI ACT

79. Plaintiff repeats and re-alleges all the paragraphs above as if they were restated herein verbatim.

80. At the time the complaint was filed against McKinney, the Defendants did not reasonably believe that the facts in their possession established a valid cause of action against McKinney under either existing or developing law.

81. At the time the complaint was filed against McKinney, the Defendants did not have in their possession, admissible evidence to establish that McKinney owed Asset the amount set forth in the complaint.

82. The filing of the complaint by Defendants was done in a grossly negligent manner or without probable cause, and for an improper purpose, namely to extort money from McKinney.

83. The complaint brought by Defendants against McKinney was terminated in favor of McKinney.

84. Defendants' conduct as detailed herein is part of a pattern and practice of illegal conduct.

85. Defendants' conduct as detailed herein is malicious, wanton, willful or oppressive, or shows a reckless indifference to the interests of others, thereby warranting punitive damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants for all damages to which she is entitled as follows:

    a.    Actual damages.

    b.    Statutory damages.

    c.    Punitive damages.

    d.    Costs and reasonable attorney fees.

    e.    Such other and further relief as the Court may deem just and proper.

Plaintiff seeks an amount in excess of Arbitration Limits.

Respectfully Submitted,

JEFFREY L. SUHER, P.C.

/s/ Jeffrey L. Suher
Jeffrey L. Suher, Esquire
Pa. I.D. #74924
4328 Old Wm Penn Hwy, Ste. 2J
Monroeville, PA 15146
(412) 374-900
jsuherlaw@me.com

MORROW & ARTIM, P.C.

/s/ Clayton S. Morrow
Clayton S. Morrow, Esquire
Pa. I.D. # 53521
304 Ross Street, 7th Floor
Pittsburgh PA 15219
(412) 281-1250
clay@pacreditcardlaw.com

**JURY TRIAL DEMANDED**